Good morning, Your Honors. And may it please the Court, my name is Francesca Reifer, and I, along with Gabriela Gallego, are the co-student counsel representing the appellant, Mr. Raul Zavala. Thank you for your pro bono representation. Thank you, Your Honor. We are joined today by our supervising attorneys, Stephen Tollefield and Gary Watt. I plan to reserve about three minutes of my time for rebuttal, and I'll do my best to keep an eye on the clock. The District Court erred in granting summary judgment for the defendants on the grounds of qualified immunity because Mr. Zavala's right to notice upon the rejection of his immunity. Specifically, the District Court erred by taking an overly narrow approach to the clearly established test by looking to see whether prior case law addressed unopened mail rejected by the prison for failing to comply with prison regulations. Am I right that we only get to the qualified immunity question if we get past Bivens, though? It seems like maybe Bivens is your biggest hurdle. Yes. And, Your Honors, Mr. Zavala's case presents a routine action against a prison official involved in a specific incident of misconduct and, as such, involves Bivens' core concern, a suit seeking damages from an individual officer. But Bivens is about cases where there really is no other remedy, and it seems like there were other remedies here. He could have sought injunctive relief in various ways, it seems. He could have perhaps gotten the criminal court that he was dealing with to order that he have these documents, which is, in fact, I think what he eventually did. Why weren't there other remedies here that would have eliminated the need for a Bivens remedy? Well, here, Your Honors, Mr. Zavala's constitutional harm occurred the moment his mail was rejected without notice, and both injunctive and declaratory relief wouldn't be adequate to address, to look backwards and address the past violations that he suffered. And moreover, the government suggests that he could bring an action for an equitable relief under 18 U.S.C. 3636, but that statute doesn't create a private right of action. So it's unclear what statute or judicially created remedy Mr. Zavala would even be able to bring an action for equitable relief if not for a Bivens action. And additionally, the administrative remedy process was not an equally effective alternative as required by the Supreme Court's Carlson v. Green decision, and this is because it relies on the prison's ability to police itself. And Mr. Zavala's case highlights the danger of allowing this because here the Bureau of Policy to find that Mr. Zavala did not have a right to notice, but even the government on this appeal hasn't argued that Mr. Zavala didn't have a constitutional right to notice when his mail was rejected. But Bivens seeks monetary damages. That's correct, Your Honor. If you were, if the cases were mandated to the trial court, what damages would you articulate? Well, Your Honor, as the Supreme Court noted in Kerry v. FIFAS, the violation of the constitutional right to due process is a cognizable constitutional injury in and of itself and would automatically entitle Mr. Zavala to nominal damages. Right. I understand nominal damages, but aside from that, I mean, what damage theory would you advance? Well, Mr. Zavala also asserts a theory for punitive damages, but even if he only gets nominal damages, it is important that he have availability, a way to redress a violation of his constitutional rights, and nominal damages can do that even if. But nominal damages aren't really better than injunctive relief, are they? I mean, if we disagree with you and think that there was a kind of injunctive relief and, in fact, maybe still is a kind of injunctive relief that your client could get, then is the $1 he would get of nominal damages going to help him so much that it's better for him to have a damages remedy instead of an injunctive relief remedy? Well, if Your Honors do feel that Mr. Zavala could have brought an injunctive relief or could still bring one, he should be allowed to amend his complaint, because at the time he filed his action, it was assumed that he had a Bivens remedy available and that it wasn't clear what other vehicle he could use. But again, an injunctive. And am I right that the magistrate judge actually ruled that he could only bring a damages claim and limited his — basically, like, tunneled him into some tunnel of damages at some point along the way, because I guess the magistrate judge thought that was the best option for him? I believe they thought it was the best option, but also by the time Mr. Zavala had exhausted the administrative remedy process, an injunctive relief would not only not be effective, but Ms. Gonzaga had left the prison and the no-notice policy was no longer in place. But his — once his constitutional violation occurred — How did we — where do you get the idea that there's a no-notice policy as opposed — I mean, is there something in writing that was a no-notice policy? Yes, Your Honor. In — when Mr. Zavala was declined notice, he requested the — through the grievance process, and he also received cop-outs, stating that when mail was rejected unopened, the prison is not — does not have to give Mr. Zavala notice. I see. But I thought that was still the policy. Why are you saying that ended? Well, and the district court summary judgment order, it noted that the policy only occurred on Ms. Gonzaga's watch, and when her tenure ended at the prison, the policy was no longer in place. Do you think that's true? I mean, I think this policy — my understanding is the Bureau of Prison's mail policy is still the same, that you have to have these various conditions of weight and everything, and that if it's not marked correctly, they return it without notice. Is that not your understanding of the current — That's not my understanding. My understanding is that Mr. Zavala is not challenging, obviously, the regulation that led to the rejection of the mail, but that once Ms. Gonzaga was no longer the mailroom supervisee, the mailroom no longer declined to provide prisoners with notice once the — well, it's a triable issue of fact, Your Honor, so it would have to go to the trial court to determine liability and damages, but the district court noted that it was a practice which, according to the evidence, only occurred while Ms. Gonzaga was the mailroom supervisee. And if the prison is providing notice now to prisoners when unopened mail is rejected, it demonstrates that it would not be burdensome or there would not be practical issues with providing Mr. Zavala with notice when his unopened mail was rejected, as Atwater already had a process in place for providing prisoners notice in all other circumstances. And finally, Your Honor, as I'll mention on the Bivens issue, that there is no separation of power concerns in this case with allowing Mr. Zavala's Bivens action to proceed because courts frequently wade into the arena of mail policies because the fundamental or the due process right to notice is so fundamental. And certainly while areas of — or issues of prisoner safety or control might be within the exclusive purview of the Bureau of Prisons, the constitutional question of when a prisoner is entitled notice under the due process clause is squarely a question for the courts. Would you like to reserve? Or do you — If this — well, I was going to discuss the qualified immunity analysis briefly. When you said finally, you — Yeah, on the Bivens issue. To address the qualified immunity analysis, Mr. Zavala's right to notice upon the rejection of his mail was also clearly established, and the district court took an overly narrow approach. A plaintiff does not need to present a case directly on point as long as this precedent put the statutory or constitutional question beyond debate. And as the Supreme Court noted in Hope v. Pelzer, a right can be clearly established even in novel factual circumstances. Here, mail policies have been clear since the Supreme Court's decision in 1974, Procunia v. Martinez. And since then, no circuit court has ever found that a prisoner was not entitled to notice upon the rejection of his mail, no matter the reason for the rejection. So isn't this situation a little different than any of the cases that you cited, and at least that I could find, in that the mail was sent back? So it's one thing if it's burned or thrown away, but this mail was sent back to the lawyers in question, and at least the second one then repackaged it and sent it back, and he did eventually get the mail. So it seems like there is arguably something different about unopened mail that's sent back because there is an opportunity to try again that doesn't exist in a lot of the cases where the issue was really — there was never going to — the mail was never going to get to the prisoner. Well, some of the Ninth Circuit cases have dealt with mail that has been sent back to the sender, and the issue with not providing formal notice to both the sender and the prisoner is highlighted in Mr. Zavala's case, because here when it was sent back to the sender, it had a label on it that said receiver did not want, which is not the case. Mr. Zavala very much wanted his legal mail, and that was so it could lead the sender to misconstrue why the mail was rejected. And the district court's overly narrow approach to the unopened versus open distinction ignores that the justifications for providing notice to a prisoner when his mail is rejected is, one, to alert the prisoner to the fact that he was sent mail and it was rejected, and, second, to allow him to contest arbitrary applications of the mail policy. And the government hasn't suggested why, given these justifications for the due process right, unopened mail should be treated any differently for an open mail. Well, so if it was unopened and returned to the lawyer, but without that erroneous stamp, would it be a different situation? I mean, they would come back, and I guess it might say too heavy, and then the lawyer could send it back in two packages instead of one. At that point, would there be a due process violation? There would still be a due process violation, Your Honor, because as the Supreme Court said, the prisoner will have an interest grounded in the First Amendment to the mail, and that the minimum procedural safeguards. But if it eventually gets through, isn't that right satisfied? Not necessarily, Your Honor, because here Mr. Zavala was also harmed by the delay in notice. And if the prisoner is told that the mail was rejected, they can try and find out what the mail policy is, how to correctly get it, see if it was correctly applied. Just returning the due process right to notice can't depend on a separate third party notifying a prisoner about the mail. It must come from the government and the BOP in this case. If we thought that your client should be given leave to amend to plead injunctive relief claim, do you know if he's interested in having that opportunity? I believe he might be interested, Your Honor, but, again, the most unlikely it wouldn't really redress the violation that he suffered because it was a backward looking past violation. It really would be damages or nothing for Mr. Zavala. So you think he does not want the opportunity for leave to amend? I think he would like leave to amend, Your Honor, or to amend if this court did find that there's another vehicle for him to bring suit. Thank you, Counsel.  Good morning. May it please the Court, Benjamin Hall, Assistant United States Attorney on behalf of Alicia Gonzaga, a Federal Bureau of Prisons Officer, sued here in her individual capacity for money damages. I want to begin by responding to the Court's questions relating to the possibility of an injunctive or equitable remedy. The Supreme Court certainly has suggested in multiple cases that inmates in federal court do have remedies in that arena, and those are remedies that serve as an alternative and a reason to refrain from creating a new remedy in damages under Bivens. For example, in the Ziegler v. Abbasi case, the Supreme Court referenced the possibility of a suit seeking injunctive or other equitable relief as an alternative for a federal prisoner and referenced the possibility of an injunction requiring the relief. That's at 137, Supreme Court, at 1865. In addition, in the Correctional Services Court v. Malesko case, the United States Supreme Court made reference to the remedial mechanisms established by the Bureau of Prisons and also suits in federal court for injunctive relief, in addition to relief through the Bureau of Prisons. In Malesko, the Supreme Court noted that, quote, unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally. That's at 534 U.S. 74. Did you suggest this before the district court? Well, no. I mean, in your briefing, you talk about alternative remedies, and they're all administrative. We would have asked you the question anyway as to judicial remedies, but it's a little bit late in the game to be talking about alternative remedies in defense to a Bivens claim, although I appreciate what you just said. Right. And frankly, Your Honor, the decision in Ziegler v. Abbasi is a significant intervening change in the law, which changed the... It's not such a change, right? I mean, you're citing Malesko, which is 2001 or maybe 2. Right. But prior to the Abbasi case, courts around the country, including in the Ninth Circuit, did various other kinds of lawsuits relating to prison life. Abbasi represents a significant change directed by the Supreme Court in the sense that after Abbasi, the courts have to consider whether a new case involves a new context that would justify extending a remedy in damages beyond the three times the Supreme Court has recognized a damages. The Supreme Court has never allowed a private remedy in damages for a prisoner alleging a procedural due process violation. The Supreme Court's instruction in Abbasi makes clear that Zavala's, Mr. Zavala's claim does arise in a new context. Mr. Zavala asked this court to conflate the new context analysis in a manner that would dramatically expand Bivens litigation, if I could explain. The three cases in which a remedy in damages has been recognized are the Bivens case itself involving a warrantless search and seizure under the Fourth Amendment, Davis v. Passman, which involved gender discrimination and violation of the equal protection component of the Fifth Amendment, and Bivens v. Green, which is a prisoner case involving deliberate medical indifference in violation of the Eighth Amendment. The Supreme Court has not recognized a Bivens remedy in any new context since Carlson was decided nearly 40 years ago. And in Abbasi, the court made the same decision. Could I ask you something different here? I'd like to know how this mail should have been labeled, and how anyone was supposed to know how it was supposed to be labeled. What the — Do you understand my question? If the lawyer wanted to get a package that included legal documents to his client, what was he supposed to do to get that package to the client? The administrative — the responses to Mr. Zavala's administrative remedies addressed that issue, and in particular, the warden's response, which is in the further excerpts of record at 129, notes that a package received without an appropriately authorized materials enclosed is considered unauthorized and shall be returned to the sender. Mailroom staff occasionally refuse acceptance of packages at the local post office based on the above-outlined procedures. Packages refused at the post office are returned to sender by the U.S. Postal Service. So is all that — so what is the exact wording that's supposed to be on the package from what you just read? I believe it's authorized by bureau policy, and I'm not sure that's — And how was the lawyer on the outside of the prison supposed to know that? There is a prison handbook that is available to all inmates. There is an inmate mail manual that's part of the publicly available documents that are published online, available from the Bureau of Prisons. I would submit that a lawyer representing a prisoner who's confined in a Federal facility has some obligation to learn and comply with those. So I read the regulations, and I hope I'm a little bit better than average at reading rules and regulations, and I thought it was completely confusing how anyone was supposed to get mail to their client. There's a provision about special mail. It's in a different place than a thing about weight. You don't know if that counts as a package. What if it's a — if there's legal mail, is it actually a package? I mean, it's completely incomprehensible. Do you disagree about that? There's no single provision that says this is how you get legal mail to a client. I wouldn't concede that it's incomprehensible. I would argue that it's, in fact, complied with frequently throughout the country. I mean, do you have any idea how often mail is rejected and legal mail is sent back? No, there's no evidence on the record. And that's because no one even knows, because they're sending it back without notice, right? Well, certainly not routinely. Well, how do we know? Well, what the institution told Mr. Zavala in this case is that once a piece of mail, whether a package or correspondence in letter form, is received from the post office, transported to the prison and opened and processed by prison staff, at that point during that time frame, the prison considered that to have been accepted and processed by the prison. And at that point, a notation was made if — But if something was over a certain weight or not exactly labeled correctly, it was sent back without any record or any notice. So we have no idea how many times legal packages that aren't exactly labeled with the language authorized by bureau policy. We have no idea how often that happens. That's correct. And one of these packages was labeled special mail, which I understand to mean it's attorney-client privilege and can only be opened with the prisoner there. Is that right? I would point out that the packages themselves have never been in evidence. The packages themselves have never been. But isn't the allegation — I mean, we have to treat the allegations as true at this point. The allegation is that one of them was labeled special mail, right? That is the allegation, yes. And is there any way that something labeled special mail wouldn't also be authorized by bureau policy? Well, I'm not sure that special mail would be the correct notation. Well, isn't special mail what you're supposed to say on legal mail? I don't believe so. Again, I don't have the regulations in front of me. So how are you supposed to label something that is attorney-client privilege so that it can only be opened in front of the prisoner who's the client? Words to that effect, I don't remember. There is, I believe, a suggestion of the language somewhere in the law. I think it's special mail. So let's say whatever it is. So maybe it says special mail open only with prisoner, whatever the language is for legal mail. If it says that, then doesn't that indicate that it's legal mail that would be authorized  If it says that, again, we don't have the packages. They're not in evidence. We don't know. There's no record of those packages at the prison. All we know is what Mr. Zavala has said his attorneys told him about what they put on those packages. Because they were returned. Correct. I mean, you could never build a record on that unless the attorney kept them, right? Correct. What is the policy now of BOP with respect to this? The suggestion has been made that the policy has changed, has it? I want to be a little careful there because I don't believe there's anything in the record before the court on that point. My client, Ms. Gonzaga, who has been a defendant in this case for nine years now, has not served in that capacity at the prison at Atwater since 2009. So you're not prepared to... Not that that's your fault, but you don't know right now. Well, my understanding is that the policy is different now. Okay. I don't know the details of that, and there's nothing in the record that I can point the court to. And if we wanted a precise answer, we could probably ask you that in supplemental briefing. Certainly. Certainly. So what's Mr. Zavala's status right now? Can you tell me? As far as his... Is he incarcerated or not incarcerated? I believe he continues to be incarcerated, yes. So, in effect, in your view, declaratory or injunctive relief would still be available to him and it would not be moot? To the extent he could allege an ongoing violation that was capable of being repeated, I think it would not be moot. Because the question of what the policy is now would obviously implicate that. Right. And you can't tell us anything at this point about your understanding of what changed? I don't know the details of that, and I'm loathe to suggest the details to the court without knowing them precisely. Yeah, that's fair. And what has been before the court here is these instances back in 2006 and 2008, which obviously some great deal of time has passed since then. If I could get back briefly to the argument I was making regarding Abbasi, Mr. Zavala has contended here that this claim does not arise in a new context because Davis v. Passman involved the Fifth Amendment and Carlson v. Green involved the Eighth Amendment. And he argues that his claim simply combines the two and therefore does not arise in a new context. Under Mr. Zavala's construction, any prisoner seeking damages under any clause of the Fourth, Fifth, or Eighth Amendments would have a remedy under Bivens. This is certainly not what the Supreme Court instructs. The Supreme Court has cautioned that even a modest extension of the three existing Bivens remedies that have been recognized is still an extension. Davis v. Passman involved a substantive due process claim involving gender discrimination. Under the Equal Protection Component, Mr. Zavala's claim is entirely different. It's a procedural claim involving prison mail. Nine years after Davis v. Passman was decided, the Supreme Court refused in Schweiker v. Chalicki to recognize a Bivens remedy for an alleged violation of procedural due process under the Fifth Amendment. That case was a Social Security context. And as Mr. Zavala acknowledges in his reply brief, less than two months ago, this very court in Vega v. United States declined to extend the Bivens remedy to a Federal prisoner's procedural due process claim under the Fifth Amendment. The court held in Vega that the prisoner's claims arising out of the prison disciplinary process plainly presented a new context under Abbasi. My time is almost up. I'll just close by pointing out that there are numerous factors that counsel hesitation in creation of a new remedy here. Those are detailed in the brief. I don't have time to go through them. In summary, Ms. Gonzaga respectfully submits that the court should decline to extend Bivens to create a new remedy in damages here. And the alternative, the court should affirm the district court's decision on the ground that Ms. Gonzaga is entitled to qualified immunity. Thank you. Roberts. It is true that Mr. Zavala asserts that his case does not present a new context, but even if it does, he may still bring his Bivens action because there are not special factors counseling hesitation. Mr. Zavala's case is readily distinguishable from the case in Abbasi and the Vega plaintiff in terms of the relief available to him. Both the plaintiffs in Abbasi and in Vega were demonstrating claims of ongoing harm. Abbasi dealt with prisoner abuse claims, and in Vega, the plaintiff was challenged  So it wouldn't be complete relief in Abbasi, right? To the extent that they're already beaten up in the past, the only remedy would be damages, wouldn't it? That's true, Your Honor. But at the time that the plaintiffs in Abbasi were suffering the harm, injunctive relief would be effective at preventing the future violation. And that's exactly true for your client, too, isn't it? But Mr. Zavala's constitutional harm occurred the moment that his mail was rejected. It was a ---- But so was the beating up in Abbasi. As soon as the beating up happens, his constitutional rights are violated. Well, the Supreme Court noted in Abbasi that the respondents were not bringing claims like in Bivens and Davis that noted individual instance of constitutional misconduct, which is what Mr. Zavala is doing here. He's not ---- While the no-notice policy is what caused the deprivation, the injury itself was when he was denied notice, and his claim was backward-looking to when the prison denied his notice. And the injunctive relief would not be able to redress the past violation of his constitutional harm. And he would still need to prove the damages that he suffered on a trial. He's just simply trying to get there. Additionally, Your Honors, in Vega, the process that the prisoner was seeking, the hearing, was provided through the administrative remedy process by its very nature, which could not be done here. And as Your Honor was pointing out, it was very difficult to understand the regulations on how to send mail. And here Mr. Zavala's lawyer even tried several times to call the prison to determine what the correct way to send the mail was, and on summary judgment, all inferences in favor of Mr. Zavala, including how the packages were labeled. And here he asserts that they did have the proper special mail label, but were still rejected without notice. Unless there are further questions, thank you, Your Honors. Thank you, Counsel. Thank you both for your arguments today. The case just argued to be submitted for decision. And thanks again for your pro bono representation.
judges: Thomas, Friedland, Olguin